UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA,
    Plaintiff,

v.                                                     CASE NO.:  6:21-cr-87-CEM-EJK

RICHARD A. KIRKENDALL,
    Defendant.
_____/

**DEFENDANT'S SENTENCING MEMORANDUM**

      Richard Kirkendall, by and through his undersigned attorney, respectfully submits his Sentencing Memorandum for this Honorable Court's consideration. Mr. Kirkendall requests this Court determine that a variance from the applicable guideline range is appropriate under 18 U.S.C. § 3553, and thus impose a sentence of five-years of imprisonment.

**STATEMENT OF FACTS**

      1.      On September 23, 2021, Mr. Kirkendall pled guilty to Counts One and Six of the Indictment. Court One charged Mr. Kirkendall with Receipt of Child Pornography and Count Six charged Mr. Kirkendall with Possession of Child Pornography. Doc. 40. The minimum term of incarceration for Count One is five years and the maximum term is twenty years. *See* 18 U.S.C. §§ 2252A(a)(2) and 2252A(a)(b)(1). The maximum term of imprisonment for Count Six is ten years. *See* 18 U.S.C. §§2252A(a)(5)(B) and 2252A(b)(2).

      2. The Initial Presentence Report calculates his total offense level as a 34 with a criminal history category of II. Initial PSR at ¶¶ 34 and 99. Thus, based on a criminal history category of II, Mr. Kirkendall faces an advisory guideline range of imprisonment of 168 to 210 months. *See id*. at ¶ 99.

1

3.      Finally, this Court must impose a minimum mandatory term of imprisonment of five-years pursuant to 18 U.S.C. § 2252A.[1] PSR at ¶ 98.

## MEMORANDUM OF LAW

The Memorandum examines the issue of whether a variance is appropriate pursuant to 18 U.S.C. § 3553, notwithstanding the calculation of the sentence determined by the guidelines. As established in the following sections, a variance is warranted in Mr. Kirkendall's case based on the factors set forth in § 3553(a).

## Introduction

### *Booker and its Progeny Provides the Court with the Discretion to Impose a Sentence of Five-Years of Imprisonment*

A district court's discretion is no longer limited by the guidelines since its matrix is now considered merely advisory. *United States v. Booker,* 543 U.S. 220, 245-67 (2005). Thus, a court is now unencumbered in its ability "to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Gall v. United States*, 552 U.S. 38, 53 (2007) (quoting *Koon v. United States,* 518 U.S. 81 (1996)). The use of the guidelines in other than an advisory function violates the defendant's Sixth Amendment Rights. *Booker,* 543 U.S. at 244-45 (Pt. II, Breyer, J.).

Congress has identified four "purposes" of sentencing: punishment, deterrence, incapacitation, and rehabilitation. 18 U.S.C. § 3553(a)(2). To achieve these ends, § 3553(a)

---

[1] Article III of the United States Constitution provides the judiciary with the express authority to decide all cases and controversies. *U.S. Const. art. III § 2*. Despite this constitutional guarantee, mandatory minimum sentences transfer judicial power to the legislative and executive branches. Faced with a minimum mandatory statute, a judge loses his or her discretion to "impose a sentence that is sufficient, but not greater than necessary" to accomplish the goals of sentencing as required under 18 U.S.C. § 3553. *See United States v. Polizzi*, 549 F.Supp.2d 308, 399 (E.D. N.Y 2008)(Weinstein, J.), vacated and remanded *United States v. Polizzi*, 564 F.3d 142 (2d Cir. 2009).

requires sentencing courts to consider not only the advisory guideline range, but also the facts of a specific case through the lens of seven factors as discussed below. *See* 18 U.S.C. § 3553(a)(1)-(7). Against the backdrop of the seven statutory factors, the advisory guideline range in Mr. Kirkendall's case is antagonistic to a just sentence. As the following sections demonstrate, an advisory guideline sentence would necessarily violate the requirement that a defendant's sentence be sufficient but not greater than necessary to satisfy the purposes of § 3553(a). *See Pepper v. United States*, 562 U.S. 476 (2011) (a "sentencing judge's overarching duty under § 3553(a) [is to] to impose a sentence sufficient, but not greater than necessary.")

  **1.**  **The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant**

In creating a statutory factor that considers both a defendant's criminal conduct and his personal characteristics, the significance of this first § 3553 factor rests in its comprehension that a defendant's criminal conduct must be considered in the context of his entire life.

  a.  *Nature and Circumstances of the Offense*

Mr. Kirkendall recognizes that his crime is serious. However, there are certain mitigating aspects of his conduct that support a variance. Upon his first contact with law enforcement, Mr. Kirkendall confessed to his crime and admitted that he had problem. A subsequent analysis of Mr. Kirkendall's smartphones established that he had downloaded videos and images of child pornography. The use of the Internet to access the images, while obviously improper and illegal, facilitated and encouraged the commission of his offense. *See* Neal Kumar Katyal, *Criminal Law in Cyberspace*, 149 U. Pa. L. Rev. 1003, 1028 (2001) ("Whereas a piece of child pornography once might have only reached a few thousand people who bought a magazine, with the internet it can reach millions very quickly."). There is however no evidence establishing that Mr. Kirkendall ever had online conversations with a minor or had sexual conduct with a minor. *Compare United*

3

*States v. McBride*, 511 F.3d 1293 (11th Cir. 2007) (affirming variance from guideline range of 151-188 months to 84 months, notwithstanding defendant's prior convictions for lewd acts on a minor).

To further place Mr. Kirkendall's actions in context, his offense did not involve the production of child pornography. Instead, his offense, while serious, involved the passive downloading of images. Nevertheless, Mr. Kirkendall is facing severe penalties based on guideline enhancements that were promulgated with a different type of offender in mind. *See*, *e.g.*, *United States v. Cruikshank*, 667 F.Supp.2d 697, 703 (S.D. W.Va. 2009) ("Rarely able to catch the monsters that create the images, society reflexively nominates the consumers of this toxic material as proxies for the depraved producers and publishers.").

The legislative history regarding the child pornography guidelines demonstrates an erroneous Congressional belief that individuals who view child pornography are child molesters.[2] Such an unfounded perspective does not provide a rational basis for a defendant's sentence. *See, e.g., United States v. Marshall*, 870 F.Supp.2d 489, 491-92 (N.D. Ohio 2012)(rejecting presumption that "those who view child pornography are indistinguishable from those who actually abuse children," finding instead that the "[e]mpirical data strongly suggests that viewing child pornography does not equate to child molestation"); *United States v. Grober*, 595 F.Supp.2d 382, 404 (D.N.J. 2008)("[T]he Court cannot make [Defendant] a surrogate for the monsters who prey on child victims through actual contact."). *See also* Andres E. Hernandez, *Psychological and Behavioral Characteristics of Child Pornography Offenders in Treatment*, at 4 (2009)("the

---

[2] *See* 137 Cong. Rec. S10323 (July 18, 1991) (Senator Helms) (in support of directing increase to base offense level from 10 to 13); *id*. at H6736, H6738 (Sept. 24, 1991)(Representative Wolf)(same); 141 Cong. Rec. S5509 (Apr. 6, 1995)(Senator Grassley)(in support of directing additional increase in base offense level from 13 to 15); 144 Cong. Rec. S12262 (Oct. 9, 1998)(Senator Hatch)(in support of directing expanded reach of "distribution" enhancement); 149 Cong. Rec. S5126 (Apr. 10, 2003)(Senator Hatch)(in support of Feeney Amendment, which included number-of-images enhancement);

4

argument that the majority of [child pornography] offenders are indeed contact sexual offenders, and therefore, dangerous predators . . . simply is not supported by the scientific evidence.").[3]

    B.    *History and Characteristics*

*United States v. Adelson,* 441 F. Supp. 2d 506 (S.D.N.Y. 2006) (Rakoff, J.), affirmed that the consideration of a defendant's history reaches its zenith at the moment the court determines the sentence to be imposed:

> But, surely, if ever a man is to receive credit for the good, he has done, and his immediate misconduct assessed in the context of his overall life hitherto, it should be at the moment of his sentencing, when his very future hangs in the balance. This elementary principle of weighing the good with the bad, which is basic to all the great religions, moral philosophies, and systems of justice, was plainly part of what Congress had in mind when it directed courts to consider, as a necessary sentencing factor, "the history and characteristics of the defendant."

*Adelson*, 441 F. Supp. 2d at 513-14.

An analysis of Mr. Kirkendall's history and characteristics is particularly critical in the instant case because it demonstrates that his actions were the result of a serious substance abuse problem. Mr. Kirkendall is a 33-year-old man with a criminal history that involves illegal drug use. While Mr. Kirkendall's substance abuse does not excuse Mr. Kirkendall's criminal conduct, it does mitigate his blameworthiness. *See* Richard S. Frase, *Excessive Prison Sentences, Punishment Goals, and the Eighth Amendment: "Proportionality" Relative to What?*, 89 Minn. L. Rev. 571, 590 (Feb. 2005) (stating that while a defendant's blameworthiness be considered according to the nature and seriousness of the crime, it can also be assessed according to "the offender's degree of culpability in committing the crime, in particular, his degree of intent (mens rea), motives, role in the offense, and mental illness or diminished capacity").

---

[3] Available at http://www.iprc.unc.edu/G8/Hernandez_position_paper_Global_Symposium.pdf;

Finally, a significant aspect that this Court should consider in sentencing Mr. Kirkendall is his post-offense rehabilitation. *See, e.g.*, *Pepper v. United States*, 562 U.S. 476, 492 (2011) (citing *United States v. Bryson*, 229 F.3d 425, 426 (C.A.2 2000) ("[A] court's duty is always to sentence the defendant as he stands before the court on the day of sentencing"); *United States v. Clay*, 483 F.3d 739, 745 (11th Cir. 2007) ("a departure for post offense rehabilitation reflects that, unlike some other defendants, the Defendant had fundamentally changed since his offense, poses a lesser risk to the community, and does not require incarceration for too long"); *Gall v. United States*, 552 U.S. 38 (2007). Upon arrest, Mr. Kirkendall requested substance abuse treatment and mental health treatment during his pre-trial services interview. As a result of the request, the Court ordered Mr. Kirkendall to participate in substance abuse and mental health treatment as directed by Pretrial Services. Doc. 10. Mr. Kirkendall did participate in substance abuse treatment and mental health treatment while on house arrest. As a result of the participation, Mr. Kirkendall recognizes the need for continued treatment if he is to be successful upon release from incarceration.

**2.     The Need for the Sentence Imposed**

   *A.     To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense*

As previously stated, Mr. Kirkendall appreciates the seriousness of his offense and is deeply remorseful for his conduct. He also comprehends that he deserves a sentence of imprisonment. Nevertheless, Mr. Kirkendall has already received and will be subject to substantial punishment for the offense. *See* Hugh LaFollette, *Collateral Consequences of Punishment: Civil Penalties Accompanying a Formal Punishment*, 22 J. of Applied Phil., 241, 244-46 (2005) (discussing and critiquing on proportionality grounds retributivist justification of collateral consequences); Jeremy Travis, *Invisible Punishment: An Instrument of Social Exclusion, in*

*Invisible Punishment: The Collateral Consequences of Mass Imprisonment* (Marc Mauer & Meda Chesney-Lind eds. 2002).

Mr. Kirkendall trusts that this Court will recognize that the punishment for his crimes has already begun, both in the disgrace and public humiliation he has already suffered during the course of his criminal proceedings, as well as in the inevitable diminution of employment prospects by virtue of his felony convictions. *See* Christopher Uggen, *Work as a Turning Point in the Life Course of Criminals: A Duration Model of Age, Employment and Recidivism*, American Sociological Review 65:529-46 (2000).

Recognizing the effect of collateral consequences of a felony conviction, one district court has emphasized the need for federal judges to account for such an impact at sentencing. *See United States v. Nesbeth*, Case No. 1:15-cr-00018, 2016 WL 3022073, at *1 (E.D.N.Y May 24, 2016) (Block, J.) (varying downward from guideline range of 33 to 44 months imprisonment to one-year of probation for a drug defendant based in part on the number of statutory and regulatory consequences he faced as a convicted felon). The *Nesbeth* Court concluded that "sufficient attention has not been paid at sentencing . . . to the collateral consequences facing a convicted defendant. And I believe that judges should consider such consequences in rendering a lawful sentence." *Id.* In granting a variance in *Nesbeth*, the court asserted that the collateral effects of a criminal conviction can be "devastating" to a defendant. *Nesbeth*, 2016 WL 3022073, at *1. As Judge Block concluded, "[t]oday, the collateral consequences of criminal convictions form a new civil death." *Id*. at *3.

Judge Block's perspective has been confirmed in Mr. Kirkendall's case. Indeed, because of his crime, Mr. Kirkendall has lost his employment. Furthermore, Mr. Kirkendall's required registration as a sex offender will have a significant impact on his future employment and living

prospects. *See* Economist, *Unjust and Ineffective* (August 6, 2009). Additionally, as a result of his arrest in the instant case, Mr. Kirkendall has not only lost his liberty, but also has been punished by the loss of his income.

### B. *General Deterrence*

A punishment of imprisonment is not necessary to further the § 3553 factor of general deterrence since there is no correlation between punishment and reductions in crime. (*See* Gary Kleck and J.C. Barnes, *Deterrence and Macro-Level Perceptions of Punishment Risks: Is There a "Collective Wisdom"?*, 59 Crime & Delinquency 1006, 1031-33 (2013). The principle of general deterrence is based on the unsupported premise that prison sentences deter crime. This faulty conception has resulted in the mass incarceration of individuals in the United States.

> For the past 40 years, the United States has been engaged in a vast, costly social experiment. It has incarcerated a higher percentage of its people, and for a longer period, than any other democracy. In fact, with 5 percent of the world's population, the U.S. is home to 25 percent of its prisoners. There are five times as many people incarcerated today than there were in 1970. . . [The] archipelago of prisons and jails costs more than $80 billion annually — about equivalent to the budget of the federal Department of Education.

Dr. Oliver Roeder et al., *What Caused the Crime Decline?*, Brennan Center for Just., 22-23 (Feb. 12, 2015), *available at* https://www.brennancenter.org/publication/what-caused-crime-decline.

The condition of mass incarceration is especially troubling based on the lack of correlation between punishment and reductions in crime. Indeed, Kleck and Barnes' study concludes:

> There is generally no significant association between perceptions of punishment levels and the actual levels of punishment that the criminal justice system achieves. This in turn implies that increases in punishment levels do not routinely reduce crime through general deterrence mechanisms, because the fundamental link between actual punishment levels and perceptions of punishment levels appears to be weak to nonexistent.

*Deterrence and Macro-Level Perceptions of Punishment Risks,* 59 Crime & Delinquency at 1031.

8

The United States Department of Justice agrees with the conclusion that incarcerating defendants is not an effective means of deterrence. *See* U.S. Dept. of Justice, Nat'l Inst. of Justice, *Five Things About Deterrence* (July 2014). In fact, the Department of Justice finds that even increasing the severity of punishment does little to deter punishment. *See Id.*; *see also* Hannah Arendt, *Eichmann in Jerusalem*, Epilogue (1963) ("No punishment has ever possessed enough power of deterrence to prevent the commission of crimes").

The weak, to nonexistent, correlation between punishment levels and deterrence is specifically revealed in the context of child pornography cases. *See, e.g.,* U.S. Sent'g Comm'n, *Report to the Congress: Federal Child Pornography Offenses* (Dec. 2012) ("CP Report"). The United States Sentencing Commission has concluded that no social science research supports the theory that criminal punishments have impacted commercial or non-commercial markets in child pornography since the advent of the Internet and file-sharing. *Id.* at 98.

In the absence of a deterrent effect, Mr. Kirkendall submits that this factor does not impact his request for a variance. His registration as a sex offender, the loss of his livelihood, as well as a five-year term of imprisonment, adequately addresses any concern regarding general deterrence.

### C. To protect the public from further crimes of the defendant

As in the case of general deterrence, the empirical evidence does not establish a relationship between sentence length and specific deterrence, regardless of the type of crime. The best available evidence establishes that imprisonment does not reduce recidivism more than noncustodial sanctions. Francis T. Cullen et al., *Prisons Do Not Reduce Recidivism: The High Cost of Ignoring Science*, 91 Prison J. 48S, 50S-51S (2011); *see also* NIC, *Myths and Facts, Why Incarceration is Not the Best Way to Keep Communities Safe* (2016).

The 2016 study by the National Institute of Corrections establishes three critical tenets. First, incarceration has a negligible impact on crime prevention. *See Id*. at 4. Instead, a longer prison sentence may lead to a greater risk of recidivism. *Id*. There is strong evidence that prison—by disrupting education and employment, reducing prospects for future employment, weakening family ties and exposing less serious offenders to older more serious offenders—leads to increased recidivism. *See The Criminogenic Effects of Imprisonment: Evidence from State Panel Data 1974-2002*, 6 Criminology & Public Policy 589 (2007). Moreover, harsh penalties do not improve the long-term outcomes of the offender. *See also* Friedrich Nietzsche, *The Genealogy of Morals*, essay 2, aph. 14 (1887) ("All in all, punishment hardens and renders people more insensible; it concentrates; it increases the feeling of estrangement; it strengthens the power of resistance"). Finally, the study concludes that community correction programs are more effective in reducing recidivism. *Id.* at 5.

In addition to the foregoing studies, an examination of Mr. Kirkendall's history and characteristics establishes that he poses a low risk of recidivism. Mr. Kirkendall is 33 years old, has some college education, has a consistent employment history, and is in a Criminal History Category of II. Based on these factors, he poses a lower risk of recidivism. *See* USSC *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines* at 12-13 (May 2004).

Finally, there is no empirical evidence to suggest that the number of images or the type of images is associated with an increased risk of recidivism. *See* U.S. Sent'g Comm'n, *Report to the Congress: Federal Child Pornography Offenses* at 204 (Dec. 2012) (concluding that the possession of even large numbers of images, including sado-masochistic images, is "generally not associated with significantly higher rates of [criminal sexually dangerous behavior]."

10

In conclusion, Mr. Kirkendall's request for a five-year sentence is supported by his low risk of recidivism. The fact that Mr. Kirkendall will not be able to access the internet as a condition of his release and will have to register as a sex offender for the rest of his life provide adequate protection to the public. Moreover, a condition that requires him to participate in sex offender treatment as a condition of probation will adequately address any recidivist concerns.

> **D.     *To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;***

Mr. Kirkendall would benefit from vocational training while incarcerated. Mr. Kirkendall can perform well despite his addiction to illegal substances. Vocational training in addition to substance abuse treatment would benefit Mr. Kirkendall while incarcerated.

**3.     The Kinds of Sentences Available**

Because a mandatory minimum sentence of 5-years applies in Mr. Kirkendall's case, this Court must sentence Mr. Kirkendall to a five-year term of incarceration.

**4-5.     The Kinds of Sentence and the Guideline Sentencing Range Established and any Pertinent Sentencing Commission Policy Statements**

Although the impact of the guidelines on a court's sentencing discretion has been discussed in Section I, *supra*, the critical question in Mr. Kirkendall's case is the exact weight this Court should give to the guidelines. As recognized in *Gall*, district courts "may not presume that the Guidelines range is reasonable." 552 U.S. at 49. *See also Rita*, 551 U.S. 338, 351 (2007) ("[T]he sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply."). Thus, as recognized by Judge Tjoflat, in some cases the Guidelines may have little persuasive force in light of some of the other § 3553(a) factors. *United States v. Glover*, 431 F.3d 744, 752-53 (11th Cir. 2005), *abrogation on other grounds*, *United States v. Joseph,* 371 Fed.Appx. 70 (11th Cir. 2010) (unpublished). Thus, mitigating circumstances and substantive

11

policy arguments that were formerly irrelevant in all, but the most unusual cases are now potentially relevant in every case.

Despite Judge Tjoflat's assertion, the guidelines pose a particular risk in Mr. Kirkendall's case for a more elemental reason – they falsely provide a promise of predictability and fairness. We look to the guideline matrix, with its facade of mathematics, to relieve us of the uncertainty of unpredictable or irrational sentences. In effect, they provide us with a sheltering sky against a great dark abyss.[4] Because we believe the guidelines to be the product of great deliberation and reasoned judgment, we often assume that they provide clear direction for the proper sentencing of every criminal defendant, notwithstanding their backgrounds and the particular circumstances of their case. Thus, we look to the guidelines to relieve us of the burden of having to decide a just sentence for the defendant. But such security is a false god and every time we make a sacrifice to it, we are lost.[5] Indeed, the guideline ranges have often and dramatically let us down in creating results that are unjust. For instance, for years, the guidelines for crack cocaine created a situation where defendants were harshly and unfairly sentenced.

Like the crack guidelines, a troubling aspect of Mr. Kirkendall's case is that the severe penalties he now faces is predicated on a guideline range that is not the product of reasoned judgment or of a deliberative process. *See United States v. Johnson*, 588 F.Supp.2d 997, 1003 (S.D. Iowa 2008)(concluding that the sentencing guidelines for child pornography crimes "do not appear to be based on any sort of empirical data, and the Court has been unable to locate any particular rationale for them beyond the general revulsion that is associated with child exploitation-

---

[4] *See* Paul Bowles, *The Sheltering Sky* (Random House 1949) ("The sky hides the night behind it and shelters the people beneath from the horror that lies above.")
[5] *See* Bowles, *Sheltering Sky,* ("Security is a false God. Begin to make sacrifices to it and you are lost.")

related offenses."); Troy Stabenow, *Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guidelines* (January 1, 2009). *See also United States v. Riley*, 655 F.Supp.2d 1298, 1300-04 (S.D.Fla. 2009) (citing Stabenow article and other case law in imposing 60-month sentence in transporting child pornography case, rather than recommended Sentencing Guidelines range of 210 to 260 months and finding that § 2G2.2 did not exemplify the Sentencing Commission's characteristic institutional role of careful study and empirical analysis); *United States v. Hanson,* 561 F.Supp.2d 1004, 1009-11 (E.D.Wis. 2008) (citing Stabenow article and other case law in imposing a 72-month sentence, rather than recommended Sentencing Guidelines range of 210 to 260 months in transporting and possession of child pornography prosecution, and finding that § 2G2.2 did not exemplify the Sentencing Commission's characteristic role of empirical study). *Grober,* 595 F.Supp.2d at 382 (imposing 60-month sentence where guidelines recommended 235 to 293 months).

Consistent with these cases, the Commission's Congressional Report demonstrates the essential failure of the child pornography guidelines. In preparing its analysis for Congress regarding the child pornography guidelines for non-production offenders, the Commission explained that it compiled the report in large part due to the increasing rate of below-guideline sentences under USSG § 2G2.2. (CP Report at ii). Such an examination was necessary pursuant to its statutory duty to "consider whether the guidelines are in need of revision in light of feedback from judges as reflected in their sentencing decisions." *Id.* Moreover, the Commission's analysis was also warranted because as a result of technological changes "the existing sentencing scheme in non-production cases no longer adequately distinguishes among offenders based on their degrees of culpability." *Id*. at ii, 323. Specifically, the Commission noted that "sentencing

13

enhancements that originally were intended to provide additional proportional punishment for aggravating conduct now routinely apply to the vast majority of offenders." *Id*. at xi.

As a result, USSG § 2G2.2's cumulative enhancements including both the content and number of images resulted in guideline ranges that were overly severe for certain offenders. *Id*. Measures of culpability including enhancements for the distribution of child pornography, number of images, and sado-masochistic images were "generally not associated with significantly higher rates of [criminal sexually dangerous behavior]." *Id*. at 204. Thus, USSG § 2G2.2 placed a "disproportionate emphasis on outdated measures of culpability regarding offenders' collecting behavior and insufficient emphasis on offenders' community involvement and sexual dangerousness." *Id*. at 321. Such a conclusion was underscored by the fact that many of the enhancements pursuant to § 2G2.2 apply in most cases.

For example, the enhancements for possessing prepubescent images and the use of a computer applied in 96.3% of the cases. (*Id*. at 209, tbl. 8-1).[6] Furthermore, the enhancements for over 500 images and sado-masochist images applied in 96.9% and 74.2% of all cases respectively. *Id*. Because of these inherent flaws in § 2G2.2, which were the product of Congressional directives rather than empirical study, the Commission requested the authority to amend the child pornography guidelines to address its problems. *Id*. at xviii, 322.[7]

---

[6] Regarding the logic of the 2-level enhancement for use of the computer, Federal District Court Judge Robin Cauthron of the Western District of Oklahoma noted, [a]s widespread as computer use is now, enhancing for use of a computer is a little like penalizing speeding but then adding an extra penalty if a car is involved." Federal Sentencing Practices Operation of the Federal Sentencing Guidelines: Reg'l Hearing Before the U.S. Sent'g Comm'n, at 5 (Nov. 2009) (statement of Robin J. Cauthron, Judge, W.D. Okla.), available at http://www.ussc.gov/AGENDAS/ 20091119/Cauthron.pdf.

[7] The Commission's request is echoed by the United States Department of Justice. *See* Letter from Anne Gannon, Nat'l Coordinator for Child Exploitation Prevention and Interdiction, U.S. Dept. of Justice, One Columbus Circle, to Honorable Patti B. Saris, Chair, U. S. Sent'g Comm'n (Mar. 5, 2013).

As a result of the enhancements for the number and nature of the images, as well as for the use of the computer, Mr. Kirkendall has received a 15-level increase in his advisory guideline sentence, without the minimum mandatory penalty, which equates to a 186-236 month increase in his term of imprisonment.

Such a result is especially troubling since the severe penalties of the child pornography guideline are not the product of careful study, empirical evidence or simple logic. *See* Federal Sentencing Practices and the Operation of the Federal Sentencing Guidelines: Reg'l Hearing Before the U.S. Sent'g Comm'n, at 2 (Feb. 2009)(statement of Gregory A. Presnell, Dist. Judge, M.D. Fla.)(stating that federal courts afford less deference to the child pornography guidelines because they are "inherently illogical" and "not based on any empirical data or institutional analysis."), available at http://www.ussc.gov/AGENDAS/20090210/Presnell_statement.pdf.

Regardless of the advisory guidelines and taking into consideration the other § 3553(a) factors, Mr. Kirkendall's requested sentence of 5-years of incarceration would reflect the seriousness of his offense, promote respect for the law, and be a just punishment.

6. **The Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct**

The conclusion that the guidelines for child pornography crimes recommend overly harsh

---

The Department agrees with the Commission's conclusion that advancements in technologies and the evolution of the child pornography "market" have led to a significantly changed landscape -- one that is no longer adequately represented by the existing sentencing guidelines. Specifically, we agree with the Report's conclusion that the existing Specific Offense Characteristics ("SOCs") in USSG § 2G2.2 may not accurately reflect the seriousness of an offender's conduct, nor fairly account for differing degrees of offender dangerousness. The current guidelines can at times under-represent and at times over-represent the seriousness of an offender's conduct and the danger an offender possesses.

*Id.* at 1.

sentences is reflected in recent data from the United States Sentencing Commission. *See 2009 Quarterly Report from the United States Sentencing Commission*, at Preliminary Data Report, Table 5. In the first three quarters of 2009, judges sentenced below the guideline range for child pornography cases in 513 of 1195 cases (43%) and the government moved for a below-guideline sentence in another 128 cases (10.7%), 101 of which were for reasons other than 5K1.1, that is, for reasons under 3553(a). *See id*.

The rate of departures is steadily increasing. In the 2017 fiscal year, sentences below the guideline range were imposed in nearly 70% of all child pornography cases, including departures that were government sponsored. *See* U.S. Sent'g Comm'n, *2017 Sourcebook of Federal Sentencing Statistics*, tbl.27.

The following table demonstrates that this high rate of departures is consistent with the significant rate of departures imposed in child pornography possession cases in the Middle District of Florida.

Table A

| CASE NAME | CASE NUMBER | JUDGE | SENTENCE IMPOSED |
|---|---|---|---|
| *United States* v. *Carlsson* | 6:15-cr-200-Orl-40KRS | Byron, J. | time served, 10 years supervised release, 12 months in Home Detention Program |
| *United States* v. *Field* | 6:13-cr-257-Orl-40TBS | Byron, J. | time served, lifetime supervised release |
| *United States* v. *Bender* | 6: 12-cr-128-Orl-37KRS | Dalton, J. | guideline range of 88-108 months - sentence of time served, 10 years of supervised release |
| *United States* v. *Tucker* | 6:11-cr-252-Orl-28GJK | Antoon, J. | guideline range of 70-87 months - sentence of time served, 15 years of supervised release, 18 months home confinement |
| *United States* v. *Sprenkle* | 6:10-cr-324-Orl-28GJK | Antoon, J. | guideline range 78-96 months - sentence of time served, 15 years of supervised release, 365 |

| CASE NAME | CASE NUMBER | JUDGE | SENTENCE IMPOSED |
|---|---|---|---|
|  |  |  | days in Home Detention Program |
| *United States* v. *Angel* | 3:09-cr-401-J-25JBT | Adams, J. | time served, 10 years of supervised release |
| *United States v. Nielsen* | 6:08-cr-242-Orl-37DAB | Dalton, J. | 6 months prison, 5 years supervised release, 6 months home confinement |

A critical aspect of Table A is that the defendants, unlike Mr. Kirkendall, were not charged with receipt and thus were not subject to a 5-year mandatory sentence. Nevertheless, these cases, like the instant prosecution, involved the passive downloading of illegal images. Thus, the undersigned submits that these cases strongly support Mr. Kirkendall's request for a 5-year sentence.

Turning to recent prosecutions in the Middle District, the sentences imposed in these cases further supports Mr. Kirkendall's position. In *United States v. David O'Brien*, the Government charged the Defendant, who had a long-standing and exemplary career of public and military service, with receipt of child pornography. Case No. 6:13-cr-194-RBD-GJK (M.D. Fla. 2014) at Doc. 70. In contrast to Mr. Kirkendall's offense, Mr. O'Brien's crime involved substantially more serious conduct. *See Id.* at Doc. 59 (Plea Agreement). Despite this more serious conduct, the Government recommended, and the court imposed, an imprisonment sentence of 60-months. *Id*. at p. 3-4. *See also United States v. Hyok Kwon*, Case No. 6:17-cr-00009-RBD-KRS (M.D. Fla. 2017) (imposing five-year mandatory sentence in case involving approximately 190,000 images).

**7.      The Need to Provide Restitution to Any Victims of the Offense.**

There is restitution in this case. The Court, therefore, should consider whether an appropriate amount of restitution is applicable and if so, whether a variance is warranted due to the need to pay restitution.

## CONCLUSION

As the foregoing discussion establishes, the circumstances of Mr. Kirkendall's case justify a variance from the Sentencing Guidelines under each of the factors under § 3553(a). Because the Supreme Court has made the Guidelines advisory and the parsimony clause of § 3553(a) the paramount consideration, the mandatory sentence of 5-years of imprisonment is "sufficient but not greater than necessary to comply with" the goals of sentencing. Mr. Kirkendall, therefore, requests this Court to impose such a sentence.

Respectfully Submitted,

*/s/ Sandra L. Woodall*
Sandra L. Woodall
Florida Bar No. 934232

## CERTIFICATE OF SERVICE

I hereby certify that on January 12, 2022, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the following: Ilianys Rivera Miranda, United Stated Attorney's Office, 400 W. Washington Street, Suite 300, Orlando, Florida 32801.

*/s/ Sandra L. Woodall*
Sandra L. Woodall
Florida Bar No. 934232
605 E. Robinson Suite 730
Orlando, FL 32801
PH:   (407) 423-1093
FAX:  (407) 841-8746
sandra@sandrawoodall.com
*Attorney for Defendant*