1

1                    UNITED STATES DISTRICT COURT
                      MIDDLE DISTRICT OF FLORIDA
2                          ORLANDO DIVISION

3    - - - - - - - - - - - - - -X
     UNITED STATES OF AMERICA,    :
4                                 :
                                  : Case No.:
5         Plaintiff,              : 6:21-cr-87-CEM-EJK
                                  :
6    vs.                          :
                                  : Orlando, Florida
7    RICHARD A. KIRKENDALL,       : February 16, 2022
                                  : 2:03 p.m.
8                                 :
          Defendant.             :
9    - - - - - - - - - - - - - -X

10                     TRANSCRIPT OF SENTENCING
               BEFORE THE HONORABLE CARLOS E. MENDOZA
11                  UNITED STATES DISTRICT JUDGE

12

13   APPEARANCES:

14   Counsel for Plaintiff:    Ilianys Rivera
                               US Attorney's Office
15                             400 W. Washington Street
                               Suite 3100
16                             Orlando, FL 32801

17   Counsel for Defendant:    Sandra Lee Woodall
                               Law Office of Sandra L. Woodall, P.A.
18                             605 E. Robinson Street
                               Suite 730
19                             Orlando, FL 32801

20

21
     Proceedings recorded by mechanical stenography.
22   Transcript produced by computer-aided transcription.

23
     Court Reporter:  Suzanne L. Trimble, CCR, CRR, RPR
24                    Federal Official Court Reporter
                      401 West Central Boulevard, Suite 4600
25                    Orlando, Florida 32801
                      e-mail: trimblecourtreporter@gmail.com

2

T A B L E   O F   C O N T E N T S

PROCEEDINGS                                                          PAGE

                            February 16, 2022

TESTIMONY

**HELEN KIRKENDALL,** called by Defense
    Unsworn Statement.....................................15
**DON KIRKENDALL,** called by Defense
    Unsworn Statement.....................................16


OTHER

Colloquy Re: Presentence Report Objections..............4
Judge's Ruling Re: Presentence Report Objections........14
Judge's Ruling Re: Total Offense Level and Guidelines...14
Defendant's Allocution..................................17
Defense Sentencing Argument By Ms. Woodall..............26
Government Sentencing Argument By Ms. Rivera............28
Judge's Summary of the Case.............................33
Imposition of Sentence..................................39


                            E X H I B I T S


  NO.                              MARKED/ADMITTED        PAGE

Government's Exhibit
  No. 1                               admitted............ 9

1              P R O C E E D I N G S

2         THE COURTROOM DEPUTY:  United States of America v.

3   Richard A. Kirkendall, Case No. 6:21-cr-87.

4      Counsel, please state your appearances for the record

5   starting with the Government.

6         MR. RIVERA:  Good afternoon, Your Honor.  On behalf of

7   the Government, Assistant U.S. Attorney Ilianys Rivera.  Here

8   with me is FBI Special Agent Kerrie Harney.  We are ready to

9   proceed.

10        THE COURT:  Good afternoon.

11        MS. WOODALL:  Good afternoon, Your Honor.

12   Sandra Woodall on behalf of Mr. Kirkendall, who is seated to my

13   left.  And we are ready as well.

14        THE COURT:  All right.  Good afternoon.

15      Mr. Kirkendall, please stand and raise your right hand.

16      (Richard A. Kirkendall sworn.)

17        THE COURT:  All right.  You can put your hand down.

18   Please remain standing.

19      On September 23, 2021, you entered a plea of guilty as to

20   Count 1 of the indictment charging you with receipt of child

21   pornography in violation of 18 U.S. Code, Sections 2252A(a)(2)

22   and 2252A(b)(1) and to Count 6 of the indictment charging with

23   you with possession of child pornography in violation of

24   Title 18 U.S. Code, Sections 2252A(a)(5)(B) and 2252A(b)(2).

25   The Court previously accepted your guilty pleas and has adjudged

4

1    you guilty of those offenses.  We have now reached the stage in

2    the proceedings where it is my duty to address several questions

3    to you, your attorney, and counsel for the Government.

4         Mr. Kirkendall, there was a presentence investigation

5    report prepared in anticipation of today's hearing.  Have you

6    had a chance to review it?

7              THE DEFENDANT:  Yes, sir, I have.

8              THE COURT:  Have you had a chance to review it with

9    the advice of your attorney?

10              THE DEFENDANT:  Yes, Your Honor.

11              THE COURT:  Do you need more time to go over that?

12              THE DEFENDANT:  No, Your Honor.

13              THE COURT:  All right.  Feel free to be seated.  This

14    question is for your attorney.

15         I see that there was one defense objection as to

16    paragraph 39.  You objected to enhancement for distribution.  Do

17    you want to expand that with any oral argument at this time?

18              MS. WOODALL:  Yes, Your Honor.  We are objecting to

19    the distribution in this particular case.  Mr. Kirkendall

20    possessed and viewed child pornography.  He did not knowingly

21    distribute it.

22         The case with respect to Mr. Kirkendall originated with the

23    Government downloading child pornography from Mr. Kirkendall

24    while he was downloading it onto his telephone.  He did not know

25    that the FBI was doing this and he certainly did not intend to

5

1   distribute to anyone.

2       The Government has filed a motion requesting a five-level

3   increase for the distribution, and our argument here today is

4   that is inapplicable.  The cases that were cited by the

5   Government, our position is that those case are not similar at

6   all to Mr. Kirkendall's situation.  And I could elaborate

7   further if the Court would like me to, but the basic argument is

8   that, you know, in all of those cases, they were charged with

9   offenses different than Mr. Kirkendall.  They were charged at

10  the -- they were charged with the offense of distribution and/or

11  transportation.  That's not what Mr. Kirkendall is charged with.

12      The Government's argument is based on something that

13  happened in 2012 that is more akin to 404(b) evidence.  It's not

14  relevant conduct.  That is our contention here.  It is a case in

15  which Mr. Kirkendall was not charged.  We have contained within

16  the plea agreement and the PSR an e-mail chat that occurred in

17  2012.  We don't have the entire thing and we don't have the

18  entire case.  And our contention here is he's not charged with

19  that.  It's too remote in time and it's not even similar to this

20  offense.  That's something that's completely different than what

21  he is charged with here and the facts of this case, and

22  therefore the five-level should not apply and neither should the

23  two-level.  There is no evidence that Mr. Kirkendall knowingly

24  distributed child pornography.

25              THE COURT:  Would the United States like to respond?

6

1          MR. RIVERA:  Yes, Your Honor.  Shall we approach or --

2          THE COURT:  Wherever you're more comfortable, I'm fine

3    with that.

4          MR. RIVERA:  I might need to approach.

5       Your Honor, we included in our submission to the Court an

6    exhibit, Exhibit 1, which the defense has had an opportunity to

7    review as well, and it's based on relevant conduct in this case

8    that occurred between 2012 and 2013 where the defendant engaged

9    in e-mail communications with a co-defendant that was sentenced

10   by this Court actually, AS.  The Court sentenced him -- I

11   believe I have the judgment -- in 2014 for distribution and I

12   believe possession of child pornography.

13         THE COURT:  Mr. AS, I recall.

14         MR. RIVERA:  AS.  Well, one of the individuals,

15   co-conspirators that he was e-mailing with, chatting with back

16   then was this defendant.  And for a period of time, they traded

17   child pornography online and they watched child pornography

18   together.  The defendant -- what I'm surprised about the

19   defendant's position today is that in his plea agreement, he

20   admits to these relevant conduct.  If the Court -- if the Court

21   reads in the plea agreement, he states that --

22         THE COURT:  Please cite the part of the page and the

23   page number.

24         MR. RIVERA:  Let me look.

25         THE COURT:  It's going to be towards the end.

1          MR. RIVERA:  Yes.  It's page 27 where it says that in

2     2012, FBI Tampa identified Kirkendall in connection with the

3     child pornography investigation.  That AS, AS, was the main

4     target of the investigation and he was later convicted and

5     sentenced to federal prison for almost 25 years.  The defendant,

6     AS, traded child pornography with others through e-mail,

7     including an e-mail account that was linked to Mr. Kirkendall.

8     Those e-mail communications were submitted by the Court in its

9     memorandum, Exhibit 1.  Yes, we don't -- we don't have -- and we

10    don't claim to have all of the communications between this

11    defendant and other co-conspirators or even Mr. AS.  But what we

12    have is sufficient to show that he was knowingly trading with

13    this cooperating defendant child pornography, basically sharing

14    child pornography with Mr. AS in expectation of receiving child

15    pornography in return.

16         The plea agreement indicates that these e-mail

17    communications between AS and Kirkendall which are before the

18    Court show they communicated on September 28, 2012,

19    September 29, 2012, and March 14, 2013; that during those

20    communications, videos with titles clearly indicative of child

21    pornography were traded between AS and Kirkendall and it

22    describes some of the titles; that AS and Kirkendall

23    communicated with one another while they distributed child

24    pornography to each other -- this is a direct admission -- and

25    some of those communications, including the statements that are

summarized in the plea agreement which are pretty disturbing.

And in addition to that, during the May 10, 2021, interview in connection with this case, he admitted that he engaged in conversations just like those that we have referenced where he traded child pornography -- traded child pornography with other users and engaged in sexually graphic conversations regarding children. And he said he made statements like that about sexually abusing children to get the trust of the other users.

Therefore, the inference -- the reasonable inference that the probation officer drew based on these communications and the Government is drawing is that the defendant knowingly traded child pornography. And that is relevant conduct in this case because it is saying it is part of a common scheme or plan. He shared a common purpose and similar modus operandi with the offense of conviction here, namely the receipt and possession of child pornography through the use of the Internet and software that allowed for the distribution of child pornography. We even have common victims, the children exploited through the possession, receipt, and distribution of these images.

The e-mail exchange is also relevant conduct because the offense is part of the same course of conduct. The defendant in his communications with these cooperating defendants said that he has been viewing child pornography since he was 15. During his interview with law enforcement officer, he said as early as when he was 12. We believe based on his statements and based on

1    the evidence acquired in this case and before the Court that

2    he's been viewing and receiving and possessing and distributing

3    child pornography for many years, for all of his adult life.

4    And basically, his admissions would reveal so.

5        We have the exhibit that we included in our memorandum here

6    in court if the Court wishes to review it again.  And we have a

7    copy for the defense.  Basically the defendant confirmed his

8    identity in those communications with Mr. AS.  He was

9    Chris Fisher I believe.  And so the communications themselves,

10   Your Honor, they speak for themselves as to what was happening

11   here and what they were intending to do.  I don't -- I don't

12   want to -- it's not necessary to read this for the record, but

13   if the Court would like to make this exhibit a part of the

14   record, we would definitely offer it.

15           THE COURT:  Are you moving it into evidence for the

16   purposes of sentencing?

17           MR. RIVERA:  Yes, Your Honor.

18           THE COURT:  Any objection from the defense?

19           MS. WOODALL:  No, Your Honor.

20           THE COURT:  Okay.  Make sure you stand when you

21   address the Court.

22           MS. WOODALL:  Yes, Your Honor.  I apologize.

23           THE COURT:  All right.  It will be admitted and marked

24   as such.  Feel free to bring it forward to Ms. Hernandez.

25       (Government's Exhibit No. 1 was admitted into evidence.)

10

1

2          THE COURT:  Is there anything further in terms of

3   argument or presentation from the United States?

4          MR. RIVERA:  Not on this point, Your Honor.  We would

5   like to address the Court regarding an appropriate sentence in

6   this case.

7          THE COURT:  Sure.  I mean, I need to get through the

8   first part.  We're still battling over objections from the --

9   there's a battle between the defense and the United States over

10  what the guideline calculations are going to be based on each of

11  your memorandum.  So once we get through this, I'll hear

12  sentencing argument.  So thank you for your argument on this

13  limited issue of the distribution issue.

14      Is there anything further from the defense on this matter?

15          MS. WOODALL:  Your Honor, just to clarify, when the

16  defendant spoke with law enforcement on May the 10th of 2021

17  when he was arrested, he did not say that he's been reviewing

18  child pornography since he was 15.  It was pornography, not

19  child pornography.  And there's a difference between the two.

20      I would also mention to the Court one of the cases, United

21  States v. Spriggs, which is an Eleventh Circuit case cited at

22  666 F.3d 1284, talks about the defendant must knowingly make

23  files available for distribution.  And in this particular case,

24  Mr. Spriggs prompted -- was prompted to choose whether to share

25  files.  There's no evidence of that in this case.

1   Mr. Kirkendall viewed files from February 14th of 2021 to

2   May 10th of 2021 and, as a result, he was charged with receipt,

3   one count of distribution, and possession.  He pled to the

4   Count 1 and Count 2.

5       To go back and sort of bootstrap something from 2012 --

6   they're not common victims.  We don't know anything about that

7   case -- I certainly don't -- other than the chats that we have.

8               THE COURT:  Let me ask you this as a general question.

9   Under paragraph identified as other relevant conduct on the plea

10  agreement that he initialed on page 27, it says in 2012.  So

11  he's agreeing this is other relevant conduct.  He initialed the

12  page and then puts:  In 2012, FBI Tampa identified Kirkendall in

13  connection with a child pornography investigation.  AS was the

14  main target of the investigation.  He was later convicted and

15  sentenced to federal prison for 25 years.  AS traded pornography

16  with others through e-mail, including the e-mail account

17  identified as XX@Yahoo.com which was linked to Kirkendall.

18  E-mail communication between AS and Kirkendall showed that they

19  communicated on September 28, 2012, September 29, 2012, and

20  March 14, 2013.  During these communications, videos with titles

21  clearly indicative of child pornography were traded between AS

22  and Kirkendall.

23      So notwithstanding the fact that he stipulated to that as a

24  factual basis for the plea agreement under a title heading that

25  says, "Other Relevant Conduct," your position is that he did not

12

1    knowingly distribute child pornography?

2             MS. WOODALL:  My position is that this conduct -- and

3    if the Court will notice, there were -- and I should have picked

4    up on this, quite frankly, when they did this plea agreement.

5    There were mistakes in it that we initialed.  For example --

6             THE COURT:  That's all I have to go by.  I can't go by

7    what you should have done or you intended to do.

8             MS. WOODALL:  I understand.

9             THE COURT:  It's titled Other Relevant Conduct.  So

10   you're telling me it's not fairly defined as relevant conduct

11   and it's also not distribution now, notwithstanding the fact

12   that that's what it says in the written agreement entered into

13   by the parties and approved by the Court.  I'm not supposed to

14   rely on that now.  I'm supposed to rely on what you meant or

15   what you should have done?

16            MS. WOODALL:  No, Your Honor, that's not --

17            THE COURT:  Okay.

18            MS. WOODALL:  -- what I'm saying.  I understand the

19   question that it says, "Other Relevant Conduct" and the Court is

20   taking that that we agree that it is other relevant conduct.  It

21   is -- it is conduct that occurred in 2012.  We were not

22   disagreeing with that.  Whether or not for the purposes of the

23   guideline calculation it's relevant, that's what we have a

24   problem with.  And that's the objection.

25            THE COURT:  Okay.  I'm going to take a few minutes.  I

1    need to deliberate for a few minutes on this and review again

2    what's been submitted to the Court, and I'll return with a

3    decision.

4        Anything further from the United States?

5            MR. RIVERA:  Your Honor, if the Court may want to

6    review our legal argument, it references some cases on the

7    subject.  And that would be all.

8            THE COURT:  All right.  Thank you.  Court's going to

9    stand in recess.

10        (Recess at 2:19 p.m., until 2:29 p.m.)

11            THE COURT:  Please be seated everyone.

12        All right.  There are two objections from the defense on

13    the additional points for distribution on the guideline

14    calculation.  The first objection, as was stated when the

15    presentence investigation report came out, was that the

16    defendant did not knowingly distribute the child pornography.  I

17    am relying on page 27 of 29 in the Other Relevant Conduct

18    section of the plea agreement.  That's belied by the language in

19    the plea agreement.

20        So the second argument that was made today was that the

21    conduct is too remote to be considered other relevant conduct.

22    And the objection there is over page 27 of 29 and thereafter,

23    specifically one part of the conduct that's described as other

24    relevant conduct.

25        I would note for the record that the defendant did in the

1   plea agreement on the day the plea was being taken and

2   Ms. Woodall correctly argues in rebuttal to the Government's

3   assertion that he admitted that he had been reviewing child

4   pornography since the age of 15, that he marked that out on the

5   plea agreement specifically, and it's denoted in what's filed on

6   page 24 of 29.  It says, Kirkendall -- he changes child

7   pornography to pornography.  So they're correct on that one.

8        Excuse me for just a moment.  It's difficult to scroll up

9   and down.

10       All right.  The defense objections are noted and preserved

11   for the record.  In terms of relying on the plea agreement and

12   the express language in the description, the factual basis

13   within the plea agreement, along with my carefully taking the

14   defendant through the actual plea, the objections are overruled.

15       The Total Offense Level is therefore 37.  The Criminal

16   History Category is II.  The range of imprisonment is 235 to

17   293.  The supervised releases are different for the counts.

18   Count 1 is five years to life.  Count 6 is five years to life.

19   They're the same, but they don't have to run opposite each

20   other.  Restitution has been provided to the Court and I'll make

21   that part of the record.  It's been stipulated to.  The fine

22   range is $40,000 to $250,000 and to $200 special assessment,

23   $100 per count.

24       Is it my understanding that the United States is not

25   recommending or seeking JVTA or AVAA assessments in this case?

15

1           MR. RIVERA:  That's correct, Your Honor.

2           THE COURT:  All right.  Having noted the objections

3    overruled and had them preserved for the record at this time,

4    there have been matters that have been submitted to the Court on

5    CM/ECF.  Are there any additional matters the defense would like

6    to present before I hear argument on the sentence?

7           MS. WOODALL:  Mr. Kirkendall's mother and father would

8    like to address the Court.

9           THE COURT:  Ms. Woodall, would they like to testify

10   under oath or provide unsworn statements?

11          MS. WOODALL:  Provide unsworn statements.

12          THE COURT:  All right.  I would invite you to invite

13   them to the podium and, once at the podium, they're certainly

14   invited to make their statements.

15          MS. WOODALL:  Thank you, Your Honor.

16          THE COURT:  If they both want to come together,

17   they're welcome to.

18          MS. WOODALL:  Thank you, Your Honor.

19          THE COURT:  Good afternoon, ma'am.  Please state your

20   full name.

21          MRS. KIRKENDALL:  Helen Francis Kirkendall.

22          THE COURT:  Is your last name spelled the same as your

23   son's?

24          MRS. KIRKENDALL:  Yes.

25          THE COURT:  Thank you, ma'am.  Feel free to make your

16

1    statement.

2          MRS. KIRKENDALL:  Your Honor, over 33 years ago, my

3    husband and I adopted Richard and his twin, Craig.  They were

4    two months premature and we fell in love with them.  It was the

5    happiest day of my life.  They both unfortunately starting

6    drinking and using drugs at a very young age.  The psychiatrist

7    they saw for ADHD told me that since they started out at such a

8    young age, they did not develop emotionally and both have issues

9    with impulse control.  I know in my heart that Richard would

10   never have done this if he wasn't under the influence of drugs

11   and alcohol.  I know it's no excuse, but it is relevant, and I

12   would like to ask you for mercy for my son.

13         THE COURT:  Thank you, ma'am.  I'll certainly take

14   that under consideration.

15      Would you like to say anything, sir?

16         MR. KIRKENDALL:  My name is Don Kirkendall.  I'm

17   Richard's father.  I appreciate how hard this is for everybody.

18   Richard never -- I mean, I've listened to everything they've

19   said.  But what they haven't said is that he ever physically

20   harmed anyone, touched anyone, tried to do anything.  Richard is

21   not a violent person.  And so we realize Richard has committed a

22   crime, but at the same time, Richard is not a violent person and

23   putting Richard away for an extended period of time doesn't make

24   any of us here safer in that sense.  And so we appreciate how

25   hard this is on you, a 30-something-year-old man and however

17

1   much time you're going to do here, but we would just ask you to

2   please consider he's not a violent criminal.

3          THE COURT:  Thank you, sir.  I will take that into

4   consideration.  And thank you for being here today.

5      Ms. Woodall, would you like to present any additional

6   evidence in mitigation before I hear from the United States?

7          MS. WOODALL:  I would.  My client would also like to

8   be heard by the Court.

9          THE COURT:  Is he the last person that's going to be

10  addressing the Court?  You're welcome to call him in any order

11  you would want, but I just want an idea.

12         MS. WOODALL:  He is.

13         THE COURT:  All right.  Mr. Kirkendall, if you would

14  like to address the Court, feel free to stand and address the

15  Court.

16         THE DEFENDANT:  Thank you, Honorable Judge Mendoza.  I

17  would like to sincerely apologize for creating the reason for

18  which we are all here.  I realize you must hear this quite

19  often, but I am truly very, very sorry.  I understand how

20  serious these charges are and I accept full responsibility for

21  my actions.  I know my choices to view this content make me look

22  like a horrible person and most would agree, but I assure you I

23  am not a bad person.  Please, just a few minutes to explain.

24      It is true I've made some bad choices since I was very

25  young.  Some would say I've always been a bit of a thrill seeker

1    or a rebellious adrenalin junkie.  I've always been curious

2    about things I didn't understand and depending on the subject or

3    situation, I've always --

4            THE COURT:  Sir, if you could, you're rubbing

5    something against the microphone.

6            THE DEFENDANT:  So sorry.

7            THE COURT:  It's okay.

8            THE DEFENDANT:  I've always felt the need to analyze

9    or break down something until I understood why or how it works

10    so I could understand its true purpose or meaning.

11       Before I was a teenager, I came across pornography many

12    times, even more so when access to the Internet and AOL came

13    along.  It seemed like every day after middle school homework, I

14    would be online just surfing the web.  At the time in school, I

15    was hanging out with the wrong crowd trying to fit in with the

16    cool kids, sneaking out late at night, smoking or drinking.

17    Every one of my childhood friends either had pornography that

18    they had gotten online or viewed from siblings at home or other

19    friends.  It just became such a normal thing to do and I didn't

20    think much more of it.

21       As I got older, I was introduced to heavy drugs like

22    cocaine and pills, mushrooms and LSD.  I got in trouble with the

23    law for my drug use and I do have some misdemeanors, as I'm sure

24    you've seen.  There is one about ten years ago, a situation

25    where it was a felony, but it was extremely blown out of

proportion with me trying to get into my family home for a
shower and the charges were dropped, as I'm sure you saw.  But
I've never been a violent person.  I mean, anyone who knows me
would confirm that I would give my shirt off my back to anyone
who needs it and have always had empathy in my heart for those
less fortunate and I've tried to help those who need it.

Now, having done quite a bit of time and soul searching
over the past nine months and remembering my own struggles in
life, I realize that drugs were just a numbing agent for my own
emotional feelings.  I got sick of being in trouble and I
decided to stop hanging out with the people that were a bad
influence on me.  I did not want to become a felon like so may
people that I'd grown up with.  Being looked at like a criminal
is one of the worst feelings in the world and now, of course,
I'll be living with that for the rest of my life.

But I decided to gain my high school diploma, which I
received, and I enrolled at Seminole State to pursue multiple
degrees, but need of money eventually outweighed my need for
school.  So I started working full time.  I eventually moved
back to the family home to help my mother and father in any way
I could.  And I wanted to try to make up for the stress that I
had put them through in my younger years.

Once I started working from home, my drinking and drug use
increased a lot.  Around 2011, I was introduced to the deep web
browser and how to find drugs online.  I also began using heavy

1    amounts of methamphetamine.  On meth, my curiosity was rampant

2    and I eventually came across this file content, things that

3    should not be allowed to exist, things that made me sick to my

4    stomach.  And I want to make one thing perfectly clear.  I am

5    absolutely 100 percent not attracted to children.  I was,

6    however, becoming addicted to the feeling of shock and horror I

7    received while on meth viewing this disgusting content.  A good

8    example would be an intense fear of heights while standing on

9    the edge of a skyscraper or swimming to shore for dear life when

10   seeing a shark fin come at you in the ocean.

11       For me, viewing this content on meth was like the

12   equivalent of an adrenaline shot of pure fear straight to my

13   heart.  I was so repulsed, but yet I just could not look away.

14   I went through stages of cognitive dissidence where I refused to

15   believe it was real, but yet I continued to view it simply

16   because of the emotional response I got from it.  Over time the

17   amount of content grew and I became desensitized to it morally

18   you could say.  I realized how mentally unhealthy my behavior

19   was and I stopped viewing it for a long time.  After getting

20   clean from meth for about a year, I had a nasty breakup with a

21   girlfriend I met at work.  I ended up relapsing and it was a

22   snowball effect from there.

23       Please understand I am not making excuses for my actions.

24   I know what I did was wrong and I've never been more ashamed in

25   my life.  I'm full of self-disgust and the only thing that keeps

1  me going is the love of my family, which I am forever grateful

2  to have.  But due to my horrible choices, I sometimes feel it is

3  undeserved.  I truly have the best parents in the world and

4  knowing the unrepairable pain that this will continue to cause

5  them rips me to pieces every day.

6      While on house arrest from June to September 2021, I

7  engaged in substance abuse counseling, NA meetings, sex addicts

8  anonymous, and meetings with my counselor and doctor once a

9  week.  I learned a lot, such as how the same chemicals secreted

10  by my brain while using meth were also secreted when viewing

11  pornography in a state of fear or panic.  Methamphetamine kept

12  me up for days while using.  After a long bender, I had blank

13  spots in my memory.  I couldn't have remembered what day it was

14  if I was asked.

15      Having read the transcripts from 2012, I made false

16  statements -- false statements to another person online in order

17  to gain their trust simply to get content.  I provided and made

18  a fake story in order to receive from that individual.  Not a

19  single statement made while looking at content actually

20  happened.  I have never and will never harm another human being,

21  especially children.  I simply do not have that in my heart.

22      Never in a billion years have I imagined that I could lose

23  decades of my life and the remaining years of my parents' lives

24  for using drugs and viewing this horrific content.  There really

25  are no words to describe how sorry I am for my actions.  I feel

as though I've placed myself under a death sentence having
severely damaged my life and the lives of others, possibly
destroyed my hopes and dreams depending on the sentence here
today and the inability to immediately repair the pain I've
caused others.  To say that I have absolutely learned my lesson
is a complete understatement, and I am begging Your Honorable
Judge Mendoza for mercy in this case.  Your Honor, I would do
anything -- anything to fix the pain that I have caused and I
wish to apologize from the bottom of my heart to the families
and the victims of the content which I viewed.  I truly did not
intend to cause harm to anyone, and I am begging for forgiveness
here today.

Having recently been baptized and accepted Jesus as my
savior, I believe everything that's happened has been to provide
a life-shattering wake-up call that was necessary for me to
change my life.  It is now my mission to let God work through me
and share my story with anyone that has an addiction to drugs or
pornography.  I promise with every ounce of my heart and soul to
dedicate the rest of my time on earth to making the right
choices and helping others do so the same.  I am not going to be
selfish and waste my life any longer like I've done for so long.
While incarcerated, I will be working towards a degree so that I
can properly help individuals to not make the same bad choices.

The pain that I've caused over the past nine months is
something no one should have to go through.  I literally cry

23

myself to sleep every night, Your Honor, and I live a nightmare
every day knowing the pain I've caused.  I've broken my mother's
heart and disgraced my father's name.  All I want to do is fix
it.

Now, most people in this world might think that I deserve
to be miserable for the rest of my life because of the content
that I viewed, but I hope and pray this Court provide me an
opportunity of a second chance to move forward with my life so I
can do everything humanly possible to make up for my bad
choices.  I want to be a productive member of society and I pray
every day to still be able to make my parents proud.  And I want
to embrace my family once again with this nightmare behind us.

The difference of the man standing before you here today,
Your Honor, compared to nine months ago is literally night and
day.  So I plead with every fiber of my body, every ounce of my
soul, please let this hall of justice mercifully provide me with
just one chance -- just one chance to redeem myself as a decent
human being.  I want to thank you, Your Honor, for allowing me
to explain and convey my deepest feelings and hopes.

To my family, I love you so much.  No matter what you say,
it's that much more.

THE COURT:  All right.  Since you brought it up, I
want to read you something, because I didn't quite understand
the entirety of this section of the presentence investigation
report.  But you referenced an incident that happened ten years

24

1   ago, in 2011, when you were 23.  This is not objected to.  So

2   these are facts before the Court.

3          According to the arrest report, on August 22nd, 2011, the

4   defendant, while armed with a knife, climbed over the locked

5   driveway gate of his parents' home and walked down the driveway.

6   The defendant's brother's girlfriend, JB, was present in the

7   home.  The defendant began banging on the doors and windows

8   yelling for JB to let him in.  JB called the defendant's father,

9   who told her not to let the defendant in and that defendant was

10  not allowed on the property.  Officers responded to the scene

11  and arrested defendant.  Defendant was located -- a knife was

12  located on the grass near where defendant was apprehended.  JB

13  told the officers that she saw something in defendant's hand and

14  when defendant looked at JB, the defendant stated, I'll kill

15  you -- N word.  I'm not going to say that -- you're not going to

16  be part of this family, as the defendant was prying on a window.

17  JB was pregnant at the time of the incident.  The defendant's

18  father responded to the scene, told officers that the defendant

19  moved from the residence approximately one year prior and that

20  he wished to prosecute the defendant.

21         Now, obviously your dad changed his mind.  That's probably

22  why that got dropped.  Was JB black?

23             MS. WOODALL:  Yes, Your Honor, she was.

24             THE COURT:  Okay.  That's what I didn't know.

25             THE DEFENDANT:  Now, Your Honor, the statements that

25

1    she made are completely overexaggerated.  She --

2        THE COURT:  I'm relying on matters that have been --

3    that are part of the record now.

4        THE DEFENDANT:  I mean, they're false.  Like, she --

5    I'm sorry.  I just -- I'm not a racist.  I'm not a racist.  I'm

6    not violent like that.  She had made threats towards me and made

7    statements to the police officers and to my family which were

8    completely false.

9        THE COURT:  All right.  I understand.

10      Is there anything further from the defense before I hear

11    from the United States?

12        MS. WOODALL:  There is, Your Honor.

13        THE COURT:  If you're going to make your sentencing

14    argument, I'll hear that after I -- I have to ask them if they

15    have any evidence in aggravation.  But do you have any more

16    evidence before argument?

17        MS. WOODALL:  I do not.

18        THE COURT:  All right.  Thank you.  Feel free to be

19    seated.

20      Will the United States be presenting any evidence in

21    aggravation?

22        MR. RIVERA:  Your Honor, argument.

23        THE COURT:  Just on argument?

24        MR. RIVERA:  Yes, Your Honor.

25        THE COURT:  All right.  Ms. Woodall, if you'd like to

1    make your sentencing argument, you're certainly welcome to do

2    so.

3            MS. WOODALL:  Yes, Your Honor.

4        Judge Mendoza, what sets Mr. Kirkendall apart from other

5    offenders is from day one, he's asked for help.  He is an

6    addict.  He is a sex addict and has a drug addiction.  I had him

7    evaluated by Dr. Rapa and you have her report.  He needs

8    treatment.  I think you can tell from the statement he's made

9    today that he's been asking for help just like that since day

10   one.

11       On May the 10th of 2021 when he was arrested, he talked to

12   the agents and he admitted what he had done.  On May the 12th of

13   2021 when he appeared before the Court and spoke prior to the

14   appearance with pretrial, he requested mental health and

15   substance abuse treatment.  And he engaged in that treatment

16   while he was out and it helped him a great deal.

17       On September the 22nd of 2021, he engaged in a proffer with

18   the United States wherein he agreed to assume the -- where he

19   agreed -- FBI agents could assume his identity to catch others.

20   He's been remorseful from day one.  He's agreed to pay

21   restitution to the victims.

22       With respect to these victims, the material that he had,

23   the agent has confirmed that none of these known victims were

24   distributed.  In an e-mail from the prosecutor, she said, The

25   agent confirmed your client did not distribute any images of

1    those victims.  I would ask the Court to consider that.

2          In this particular case when you look at the nature and the

3    circumstances of the offense, Mr. Kirkendall sat in his motor

4    home, which is adjacent to his parents' home -- it's actually on

5    a vacant lot in a pretty remote area -- and he viewed child

6    pornography while he was using drugs because he's addicted.  He

7    viewed a lot of pornography.  The factual basis shows he

8    admitted to 75 percent of it was pornography, but it eventually

9    went into some child pornography at about 25 percent.

10         We're asking for a significant variance in this case.  And

11   the reason is because in all of these cases, all of these

12   enhancements virtually apply to everyone.  The use of the

13   computer applies, prepubescent minor.  This material is readily

14   available.  I'm not saying -- you know, he should not have

15   downloaded it, obviously, but all of these enhancements apply in

16   every single case.

17         So I'm asking the Court to look at Mr. Kirkendall as he

18   stands here today as an individual with a serious addiction.  We

19   believe five years is sufficient but not greater than necessary

20   in this case followed by a period of supervision in which he

21   would receive sex offender treatment, needed sex offender

22   treatment.  We're requesting Coleman and the RDAP program if he

23   qualifies.  He definitely needs some substance abuse treatment

24   as well as the sex offender treatment once he's released from

25   incarceration.

1      When you look at his prior history, it is all drugs, almost

2  the entire thing with the exception of what the Court mentioned,

3  the one incident that happened about ten years ago for which he

4  was not prosecuted.

5      He's not a bad person.  He just has an addiction.  And it's

6  unfortunate that he's here today before the Court.  We believe

7  five years would afford adequate deterrence.  There's no

8  evidence that he's ever, ever touched a child in my manner or

9  that he ever would.  And that's also apparent from Dr. Rapa's

10  report.  There's a low probability that he will reoffend and/or

11  commit an offense against a child.

12      So we're asking for the Court to provide a period of

13  probation so that he can receive sex offender treatment and a

14  five-year period of incarceration that in this particular case

15  is sufficient but not greater than necessary.

16          THE COURT:  All right.  Thank you for your argument.

17          MS. WOODALL:  Thank you.

18          THE COURT:  Would the United States like to make a

19  sentencing argument?

20          MR. RIVERA:  Yes, Your Honor.

21      When the defendant says that he cries himself to sleep

22  because of this case, I can't help but think about the victims

23  of his crime, the victims of these child sexual exploitation

24  cases where they suffer a life sentence of pain and humiliation

25  caused by defendants like him that get sexual gratification from

looking and distributing these images.  He has demonstrated

absolutely no insight into what he's done in this case when he

blames it on drugs.  I've seen no empirical data that would say

there is a correlation between drug use and engaging in the

sexual abuse of a minor.  Blaming it on drugs is a step in the

wrong direction here.

And I keep hearing the same excuses from this defendant

over and over and over.  But when we look at the evidence in

this case, when he says that he's not attracted to children,

well, the same images that he was sharing with this co-defendant

back in 2014, the nature of the images is the same type of

images that we find in 2021.  And what I mean by that,

Your Honor, is that when the undercover officer engaged in the

BitTorrent investigation and she was acquiring child pornography

images that the defendant had available for distribution, those

images depict children, toddlers being held down, sexually

abused and sodomized.

When we look at the chats that he engaged in with AS back

in 2012 and 2013, he is telling this individual that he likes to

see the most hardcore child pornography.  That's what he was

asking for.  That's what's in this Exhibit 1.  And I thought it

was so important to include it because pre indictment, pre any

awareness that law enforcement would ever be involved in this

case, he's saying exactly what he likes, exactly what he wants.

And in that chat, even though he redacted the indictment to say

1  that he's been looking at pornography for 15 years, when

2  theone_407, AS, said that he's been looking at PTHC, which

3  stands for preteen hardcore, since I was 21, the defendant said,

4  That's my favorite one, the 6-YO.  And the he says, Me since I

5  was 13.  And then he says, Wait, no, it was 15.  That's what he

6  told the cooperating defendant through these chats, that since

7  he was 15, he's been watching or viewing PTHC.

8      As a result of the undercover investigation in this case,

9  as the Court is aware, we were able to identify the IP address

10 sharing these videos of child pornography.  They were linked to

11 his residence in Oviedo, Florida.  May 2021, federal agents

12 execute a search warrant at his residence.  They seized three

13 cell phones.  They find 322 images and 103 videos depicting the

14 sexual abuse of children.  The content of those images and

15 videos was extremely disturbing.  His collection depicted

16 extremely sadistic content that's summarized and not contested

17 is part of the presentence investigation report to include

18 babies being raped and sodomized.  He told law enforcement at

19 the time that he had an addiction to pornography and sex and

20 that he had started viewing child pornography -- or if the

21 defense is -- they're saying pornography since he was 12.  The

22 evidence shows that in 2012 and 2013, he was viewing and

23 downloading child pornography and sharing with others and in

24 2021, he is doing the same.

25      During the e-mail communications with the cooperating

1    defendant, he said he was into the most hardcore child

2    pornography.  He said he wanted to see blood.  I like the

3    screaming ones.  And that he was into two-year-old females.  He

4    also told the cooperating defendant that he had sexually abused

5    a child in the past.  He described it as a few minutes' worth of

6    paradise but not enough to come.  Those were his words.  He said

7    that he involved the child in giving him oral sex and rubbing

8    his penis against the child's vagina.

9         In those 2012, 2013 e-mails, he also encouraged the

10   cooperating defendant to sexually abuse his girlfriend's

11   three-year-old daughter.  He said, Don't wait too long.  You

12   don't want her to remember or understand what's going on.  Three

13   years old is perfect, I think, K.  Just take her to the

14   bathroom, like, ask her if she needs to go, pull shirt up over

15   face and after she done, say you need to wipe her off and use

16   your cock to wipe her pussy off but take your time.

17        The CW responded three words -- three letters, M-M-M.

18        Kirkendall continued:  If shirt still over head, uncover

19   mouth part and tell her you got some candy for her.  Stick your

20   cock in.  I've done this.  It works.  Those were his words.  If

21   those are the words of someone that's not sexually interested in

22   children, I'm just not sure what it is, what that looks like.

23        If this background sounds familiar, it's because Your Honor

24   sentenced AS back in 2014 to almost 25 years in prison for both

25   possession and distribution of child pornography.  The defendant

1    was his co-conspirator back then.  They traded through e-mail

2    for a while, two dangerous individuals with a common purpose, to

3    obtain sexual gratification out of the sexual exploitation of

4    prepubescent children.

5        In this case, he possessed 15 series of child pornography,

6    and five victims have requested restitution.  While the

7    defendant's agreement to pay restitution is a step in the right

8    direction, it is simply not enough mitigation.

9        He has a Criminal History Category of II.  At his young

10   age, he's had already many arrests.  And that one incident

11   involved, I believe, his brother's girlfriend, who was pregnant

12   at the time, his current niece.  That is his niece, who is

13   biracial.

14       He has a history of depression and mental health treatment

15   as well as drug and alcohol abuse.  We recognize that.  It

16   includes some serious drugs, crack cocaine and meth.  He has

17   received substance abuse treatment.  I personally recall hearing

18   his father at the detention hearing, and I do believe they've

19   tried to help him through life and provide him with the tools to

20   be a law-abiding citizen and that he's received plenty of

21   opportunities through his family and the love that he has

22   received and the support that he received through them.

23       However, these personal characteristics of the defendant in

24   the context of this case leads the Government to have serious

25   concern regarding the risk the defendant represents to children

1  in the community.  Admittedly, he started viewing child

2  pornography when he was a teenager and that did not stop until

3  the arrest in this case.

4       Given the length and the severity of his conduct, his

5  obvious sexual interest in children, and his enticement of

6  others to sexually abuse children, we believe a sentence of

7  240 months fits the seriousness of the crime.  He's a danger to

8  children in our community.  I believe, Your Honor, that a

9  sentence of 240 months may be sufficient time to deter him from

10  engaging in this conduct in the future, provide general

11  deterrence, and promote respect for the law.

12       That would be all, Your Honor.

13           THE COURT:  Thank you.  I'm going to take a moment to

14  deliberate over the sentence and then I'll return and then we'll

15  conclude.  Court's at recess.

16     (Recess at 3:00 p.m., until 3:20 p.m.)

17           THE COURT:  All right.  Please be seated everyone.

18       The Court has asked the defendant why judgment should not

19  now be pronounced and, after hearing the defendant's response,

20  the Court has found no cause to the contrary.  The parties have

21  made statements on their behalf or have waived the opportunity

22  to do so, and the Court has reviewed the presentence report.

23       So I wanted to take a break to deliberate on this case for

24  a few minutes, but I also wanted to a chance to reacquaint

25  myself with the AS case because I think this case is very

1    similar to that one in a lot of ways.  And we can always argue

2    that they're different in other ways, but I think avoiding

3    sentencing disparity is an important part of what I do here, and

4    I need to make sure that on cases that are similar or that are,

5    quote/unquote, potentially co-defendant cases, I digest as much

6    as I can because that information can be helpful in trying to be

7    consistent in terms of how similarly situated people -- not

8    everyone is going to be exactly situated the same, but if

9    they're similarly situated in any way, then it's worth looking

10   at.  And it does assist me to look at my prior cases rather than

11   to be bombarded with what other judges in this building or this

12   district or this state or this circuit have done.  My prior

13   sentences are really helpful to me, and that's why I wanted to

14   review that.

15       So in this particular case, I had a list of quotes that I

16   found very troubling that came from the presentence

17   investigation report, every single one of which was read into

18   the record in part or entirely by the Government.  So I'm not

19   going to belabor that point.

20       So I will tell you that what concerns me about this case is

21   you put these in context and this is a receipt and possession

22   case.  And so it's a pretty high range based on that.  And so

23   all I know is what I read about you in the presentence

24   investigation report, what little contact I have with you, and I

25   have to rely on that.  So sometimes if I have the opportunity, I

1    like to ask questions or expand if I could.

2          So before we get into that, your parents deserve better

3    than this.  They're saints.  They took two kids that needed a

4    place.  They raised them.  And you have been hell on earth for

5    your entire childhood up until now.  So if you consider giving

6    them an apology as well, because they deserve better.  They

7    poured their lives into you.  They're here supporting you even

8    now.  They're good people who deserve better than this.  And

9    whatever happens here, they're going to leave with their heads

10   down thinking they failed when it's you that failed.

11         So having said that, I'm having a lot of trouble with

12   your -- some of the statements you made.  And so when I asked

13   you about your now niece, the reason I asked you that question

14   is because I really didn't know the answer.  But I think that's

15   the first time I got a real view of how aggressive and angry you

16   can become.  And you became aggressive and angry and your

17   attorney was having trouble controlling you from that point on.

18   You did not acquit yourself well in here.  But it's what I

19   needed to see.  And arguing with me now isn't going to change

20   anything.  So that's when I got to see what I was dealing with

21   and that's probably more consistent with the guy that showed up

22   in 2011 and did what he did, which is, by the way, facts before

23   this Court unobjected to.  But you are not being sentenced for

24   that.  That's only relevant conduct.

25         So what we have here is possibly the worst possession and

1  receipt case I have ever seen in my career.  And I'm going to

2  tell you why.  Because in these cases, I often hear from the

3  people that are involved that it's a persona I put on in order

4  to make the person on the other end, on the other computer feel

5  comfortable to exchange child pornography with me.  And

6  generally, even in Mr. AS's case, he did the same thing you did.

7  He bragged about things that he had done in order to try to make

8  whoever he was communicating with comfortable in order to

9  exchange information with him.

10      What's different about this case is how oddly specific you

11  were about what you had done in coaching other people on what to

12  do and what you wanted to do.  So if I am to believe your

13  rationale, you're not sexually attracted to children, you just

14  got a rush watching toddlers getting tortured because you were

15  on drugs.  So as this escalates, then what happens when looking

16  at this stuff isn't enough?  I don't know what's going to

17  happen.  And you're going to tell me nothing is going to happen.

18  But I don't know that.

19      I can tell you this.  I fully accept and will consider the

20  opinions of any expert who gives me a professional opinion as to

21  whether or not they think you're a risk factor or not.  But I'm

22  going to tell you something anecdotally that I don't think I've

23  ever said before.  I've had people in your situation sometimes

24  sentenced by other judges come back after victimizing other

25  children after they got short sentences or they convinced a

1    judge at some point to give them a break and even some people

2    that I've had I've sentenced.  And you know who's never here at

3    the violation of sexual offender probation or on the new charge,

4    who is never here to explain or to admit, my bad, Judge, I made

5    a mistake?  The experts who told the judge that they were not a

6    high risk.  So that's food for thought.

7         So the first thing I have to decide is, are you a dangerous

8    person?  And notwithstanding your words, on page 8 of the PSR at

9    paragraph 23, document 55, they say, Kirkendall admitted that he

10   engaged in the conversations like the ones with AS from 2012

11   where he traded child pornography with other users and engaged

12   in sexually graphic conversations with children.  Kirkendall

13   divulged that he made statements about sexually abusing children

14   to get the trust of the other user.  Kirkendall affirmed that he

15   had never abused a child.

16        So I guess that's the end of story, right?  Because

17   notwithstanding the fact that you with incredible specificity

18   described what you had done to children and what you would do to

19   children if given the opportunity, that statement that, oh, I

20   just made it up to try to get child porn, that's enough to undo

21   everything.  So believe me now that I lied to you before.

22        So that's sort of where I'm at.  So this is one of those

23   moments that reminds me of when I used to be in the Navy.  I was

24   a defense attorney and we used to have these situations where a

25   ship -- the worst thing that happens in the Navy is when a ship

1  collides with another ship.  And as a criminal defense counsel,

2  you had to represent people that were on the ship when things

3  went wrong.  Eventually you would find the person who was there

4  who could have kept it from happening.  And it's a myriad of

5  things that go wrong at the same time to cause the collision,

6  and at some point you have to ask that person, what were you

7  thinking?  What else did you need to make a decision to try to

8  stop this chain of events from ending in a disaster?  And that's

9  what I have to ask myself.  What more do I need to make the --

10 to come to the conclusion that you're a dangerous person?  And

11 it's tough.

12     I can't stand these cases.  And I accepted the

13 responsibility to handle these.  Nobody likes handling these

14 cases.  I've lost sleep deliberating over, reviewing this,

15 trying to find answers.  And it's tough.  But in this particular

16 case -- and I'm not saying you would, but this is the beginning

17 of a potential disaster.  So what would I say if someone came to

18 me later on and said, What were you thinking?  What else did you

19 need to take this case seriously and not give a 60-month

20 sentence to someone who told you with specificity when he didn't

21 think anyone was watching, by the way -- that's different.

22     The clearest window into someone's soul is what they say

23 when they don't think anyone's watching.  So you didn't think

24 anyone was going to pop this back up read it in a courtroom.  So

25 when you were at your purest form, this is what you said you'd

1    done and what you would do.  And if I don't take it seriously,

2    then I have questions about -- I would have questions about my

3    own judgment.

4        So I have to rely on your words.  I have to rely on what

5    you said here.  And I have concluded that based on everything

6    I've seen here and in review -- careful review of the case

7    involving Mr. AS that this case is arguably as bad as that one

8    and one could argue reasonably worse than that one.

9        So if you would be kind enough to stand with your attorney,

10   I'm ready to impose the sentence.

11       The Court has asked the defendant why judgment should not

12   now be pronounced and after hearing the defendant's response,

13   the Court has found no cause to the contrary.  The parties have

14   made statements on their behalf or have waived the opportunity

15   to do so, and the Court has reviewed the presentence report.

16       Pursuant to Title 18, U.S. Code, Sections 3551 and 3553, it

17   is the judgment of the Court that the defendant is hereby

18   committed to the custody of the Bureau of Prisons to be

19   imprisoned for a term of 293 months -- 293 months as to the

20   first count and 188 months as to the second count to run

21   concurrently.

22       Upon release from imprisonment, you shall serve a ten-year

23   term of supervised release as to Counts 1 and 6, all terms to

24   run concurrently.  While on supervised release, you shall comply

25   with the mandatory and standard conditions adopted by the court

40

in the Middle District of Florida.

In addition, you shall comply with the following special conditions:  You shall participate in a substance abuse program, outpatient and/or inpatient, and follow the probations officer's instructions regarding the implementation of this directive. Further, you shall contribute to the costs of these services not to exceed an amount determined reasonable by the probation office's sliding scale for substance abuse treatment services.

During and upon completion of this program, you are directed to submit to random drug testing.  You shall participate in a mental health treatment program specializing in sexual offender treatment and submit to polygraph testing for treatment and monitoring purposes.  You shall follow the probation officer's instructions regarding the implementation of this directive.  Further, you shall contribute to the costs of such treatment and/or polygraphs not to exceed an amount determined reasonable by the probation officer based on the ability to pay or the availability of third-party payment and in conformance with the probation office's sliding scale for treatment services.

You shall register with the sex offender registration agencies in any state where you reside, visit, are employed, carry on a vocation, are a student, or as directed by probation. The probation officer shall provide state officials with all information required under Florida sexual predator and sexual

offender notification and registration statutes and/or the Sex

Offender Registration and Notification Act, and probation may

direct the defendant to report to these agencies personally for

required additional processing, such as photographing,

fingerprinting, and DNA collection.

You shall have no direct contact with minors -- a minor is

a person under the age of 18 -- without prior written approval

from your probation officer, and you shall refrain from entering

into any area where children frequently congregate, including

schools, daycare centers, theme parks, playgrounds, et cetera.

You are prohibited from possessing, subscribing to, or

viewing any images, video, magazines, literature, or other

materials depicting children in the nude and/or in sexually

explicit positions.

Without prior written approval of your probation officer,

you are prohibited from either possessing or using a computer,

including a smartphone, a hand-held computer device, a gaming

console, or an electronic device capable of connecting to an

online service or an Internet service provider.  This

prohibition includes a computer at a public library, an Internet

cafe, your place of employment, or an educational facility.

Also, you are prohibited from possessing an electronic data

storage medium, including but not limited to a flash drive, a

compact disk, a floppy disk, or any other data encryption

technique or program.  If approved to possess or use a device,

you must permit routine inspection of the device, including the
hard drive and any other electronic data storage medium to
confirm adherence to this condition.  The United States
Probation Office must conduct an inspection in a manner no more
intrusive than necessary to ensure compliance with this
condition.  If this condition might affect a third party,
including your employer, you must inform the third party of this
restriction, including the computer inspection provision.

You shall submit to a search of your person, residence,
place of business, any storage units under your control,
computer, or vehicle conducted by the United States Probation
officer at a reasonable time and in a reasonable manner based
upon reasonable suspicion of contraband or evidence of a
violation of a condition of release.  You shall inform any other
residents that the premises may be subject to a search pursuant
to this condition.  Failure to submit to a search may be grounds
for revocation.

You are prohibited from incurring new credit charges,
opening additional lines of credit, or obligating yourself for
any major purchases without approval of your probation officer.
You shall provide the probation officer access to any requested
financial information.

Having been convicted of a qualifying felony, you must
cooperate in the collection of DNA as directed by probation.

You must refrain from any unlawful use of a controlled

substance.  You must also submit to one drug test within 15 days
of placement on supervision and at least two periodic drug tests
thereafter as directed by probation.  You must submit to random
drug testing not to exceed 104 tests per year.

Restitution is ordered as follows:  $3,000 to Violet, the
At School series; $3,000 to Maria, the best necklace series;
$3,000 to Lilly, the Vicky series; $3,000 to Jenny, the Jenny
series; and $3,000 to Pia, the Sweet Sugar series, for a total
of $15,000, pursuant to 18 United States Code
Section 3664(d)(5).  Restitution is payable to the Clerk,
U.S. District Court, Middle District of Florida for distribution
to the victims.

Payment of this obligation shall be made as follows:  While
in the Bureau of Prisons' custody, the defendant shall either,
one, pay at least $25 quarterly if the defendant has a
non-UNICOR job; or, two, pay at least 50 percent of the
defendant's monthly earnings if the defendant has a UNICOR job.
Upon release from custody, the defendant is ordered to begin
making payments of $200 per month, and the payment schedule
shall continue until such time as the Court is notified by the
defendant, the victim, or the Government that there has been a
material change in the defendant's ability to pay.

The joint motion, Document 64, is therefore granted.

Based on the financial status of the defendant, the Court
waives the imposition of a fine.

1    Any pending forfeiture matters will be rolled into the

2    judgment and sentence.

3    It is further ordered the defendant shall pay a special

4    assessment of $200, which shall be due immediately.

5    As indicated previously, the special assessment pursuant to

6    18 United States Code, Section 3014 will not be imposed.

7    The special assessment pursuant to 18 United States Code,

8    Section 2259A will not be imposed.

9    After considering the advisory sentencing guidelines and

10   all the factors identified in Title 18, United States Code,

11   Sections 3553(a)(1) through (7), the Court finds that the

12   sentence imposed is sufficient but not greater than necessary to

13   comply with the statutory purposes of sentencing.

14   The Court has accepted the plea agreement because it is

15   satisfied that the agreement adequately reflects the seriousness

16   of the actual offense behavior and that accepting the plea

17   agreement will not undermine the statutory purposes of

18   sentencing.

19   Under the plea agreement, defendant entered a plea of

20   guilty to Counts 1 and 6 in return for dismissal of 2, 3, 4, and

21   5.  In accordance with the plea agreement Counts 2, 3, 4, and 5

22   are dismissed.

23   Pursuant to the defense request, the defendant, per

24   recommendation of the Court, is to be placed in Coleman for

25   familial proximity.

1      And to the extent he qualifies, the Court recommends that

2    he participate in the Residential Drug Treatment Program or

3    RDAP.

4      The Court having pronounced sentence, does counsel for

5    defendant have any objection to the sentence imposed or the

6    manner in which the Court imposed sentence, other than those

7    previously stated?  Do you want to object to the substantive

8    reasonableness?

9          MS. WOODALL:  We are objecting to the substantive and

10   procedural reasonableness of the sentence.  We object to the

11   review of the AS case.  He wasn't charged with that.  We object

12   to the sentencing enhancement.  And we object to the

13   substantiveness of the sentence.  It's unreasonable and

14   excessive.

15         THE COURT:  Noted and preserved.

16      Any objection from the United States?

17         MR. RIVERA:  No objection from the Government,

18   Your Honor.  One request regarding the transcript, that it be --

19   at least the reference to the AS name --

20         THE COURT:  You want AS redacted to be AS?

21         MR. RIVERA:  Yes, Your Honor.

22         THE COURT:  Any defense objection to that?

23         MS. WOODALL:  Your Honor, redacted as to --

24         THE COURT:  Instead of saying AS, it will reed AS in

25   the transcript.  That's what she's asking for.

1          MS. WOODALL:  No.  I don't have an objection to that.

2          THE COURT:  Without objection, that will be done.

3      The defendant is remanded to the custody of the

4  U.S. Marshal to await designation by the Bureau of Prisons.

5      To the extent permitted by your plea agreement, you have

6  the right to appeal from the judgment and sentence within

7  14 days from the entry of judgment.  Failure to appeal within

8  that 14-day period shall constitute a waiver of your right to

9  appeal.

10     The Government may also file an appeal from this sentence.

11     You are also advised that you are entitled to the

12  assistance of counsel in taking an appeal and that if you cannot

13  afford a lawyer, one will be provided for you.

14     If you cannot afford the filing fee, the Clerk of the Court

15  will be directed to accept notice of appeal without such fee.

16     Is there anything further from the United States?

17          MR. RIVERA:  No, Your Honor.

18          THE COURT:  From the defense?

19          MS. WOODALL:  No, Your Honor.

20          THE COURT:  All right.  Thank you.

21     (WHEREUPON, this matter was concluded at 3:37 p.m.)
                         *  *  *
22                    CERTIFICATE OF REPORTER

23  I certify that the foregoing is a correct transcript of the
    record of proceedings in the above-entitled matter.
24
      /s/ Suzanne L. Trimble_____        4/28/22
25    Suzanne L. Trimble, CCR, CRR, RPR              Date
      Official Court Reporter